USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 14, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

TRUSTEES OF THE NEW YORK CITY                          :
DISTRICT COUNCIL OF CARPENTERS                         :
PENSION FUND, WELFARE FUND, ANNUITY                    :
FUND, APPRENTICESHIP, JOURNEYMAN                       :
RETRAINING, EDUCATIONAL AND INDUSTRY :           15-cv-8081 (KBF)
FUND, CHARITY FUND, THE NEW YORK CITY :
AND VICINITY CARPENTERS LABOR-                         :           OPINION & ORDER
MANAGEMENT CORPORATION, and THE NEW :
YORK CITY DISTRICT COUNCIL OF                          :
CARPENTERS,                                            :
                                                       :
                       Plaintiffs,                     :
                                                       :
              -v-                                      :
                                                       :
FRANCIS A. LEE, and MATT-CON SERVICES                  :
CORP.,                                                 :
                                                       :
                       Defendant.                      :
                                                       :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

On October 14, 2015, plaintiffs filed this action pursuant to § 502(a)(3) of the

Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29

U.S.C. § 1132(a)(3), and § 301 of the Labor Management Relations Act of 1947

("LMRA"), as amended, 29 U.S.C. § 185, seeking to collect delinquent employer

contributions to a group of employee benefit plans from defendants Francis A. Lee

("Lee") and Matt-Con Services Corp. ("Matt-Con").  In response to defendants'

motions to dismiss the initial complaint, plaintiffs filed the operative First Amended

Complaint ("FAC") on December 11, 2015.

Although this suit is plaintiffs' first attempt to hold Lee and Matt-Con liable for the delinquent contributions at issue, this case is just the latest in a number of actions that plaintiffs have filed to recover these funds.  Plaintiffs previously brought a total of three actions against Integrated Structures Corp. ("Integrated") and Francis A. Lee Company ("FALC"), two construction companies against whom plaintiffs have obtained unsatisfied judgments and/or confirmed arbitration awards for the delinquent contributions at issue.  FALC, for its part, failed to appear in the action brought against it and judgment was entered in the amount of $159,687.88. Plaintiffs commenced two separate actions against Integrated.  In the first action, Integrated filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code days before a non-jury trial in this Court was scheduled to begin.  That action remains stayed.  Integrated failed to appear in the second action (which predated Integrated's filing for bankruptcy), and judgment was entered in the amount of $68,707.24.  Now, in this action, plaintiffs primarily seek to recover the delinquent contributions from Lee, the owner and operator of Integrated and FALC, and Matt-Con, which is alleged to be the alter ego of Integrated and FALC and of which Lee is the operational director.

Pending before the Court are defendants' motions to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF Nos. 39, 42.)  Lee argues that the Court lacks subject matter jurisdiction over the claims against him because they are the exclusive property of Integrated's bankruptcy estate, and Matt-Con argues that the Court lacks ancillary

jurisdiction over the claims against it and that the Court should decline to exercise supplemental jurisdiction.  Defendants further argue, in the alternative, that the FAC must be dismissed because, <u>inter alia</u>, the claims against Lee are time-barred, the ERISA fraud claim does not satisfy the particularity requirements of Rule 9(b), and the allegations against Matt-Con fail to state the elements necessary to allege plausible claims.

For the reasons set forth below, defendants' motions to dismiss are denied as to all claims except for plaintiffs' Third Claim for ERISA fraud.  The Court dismisses that claim without prejudice for failure to meet the heightened pleading standards of Rule 9(b).  Plaintiffs shall have leave to amend the ERISA fraud claim within 90 days of the date of this Opinion & Order.  In the interim, discovery shall proceed immediately, and plaintiffs shall have the benefit of that discovery in any attempt to replead the dismissed claim.

I.    BACKGROUND[1]

    A.    <u>Parties</u>

Plaintiffs include the trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, and Apprenticeship, Journeyman Retraining, Educational and Industry, and Charity Funds (the "Funds"), which are multiemployer benefit plans organized and operated under ERISA.  (FAC ¶¶ 4-5.) Plaintiff New York City District Council of Carpenters (the "Union") is a labor

---

[1] The following facts are those alleged or incorporated by reference in or integral to the FAC.  (First Am. Compl. ("FAC"), ECF No. 33.)  The Court here recounts only those facts relevant to resolving the pending motions to dismiss.

organization that represents employees and has entered into various agreements with employers or trade associations for the benefit of its members. (FAC ¶ 9.)

Defendant Francis A. Lee is/was the owner and operator of Integrated and FALC, and is also the operational director of defendant Matt-Con Services Corp. (FAC ¶¶ 7, 82.) At all relevant times, Integrated and FALC were parties to, or manifested an intention to be bound by, a collective bargaining agreement ("CBA") with the Union that bound those entities to make specified hourly contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union. (FAC ¶¶ 10-11.) The CBA also required Integrated and FALC to "furnish their books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions." (FAC ¶ 12.)

B.    Events Preceding This Action

Pursuant to the CBA, plaintiffs conducted an audit of Integrated covering the periods of February 25, 2007 through May 31, 2008 and June 1, 2008 through October 17, 2009. (FAC ¶ 13.) The auditor determined that Integrated failed to report and make contributions in the principal amount of $1,220.72 for the first period and $49,282.28 for the second period. (FAC ¶ 13.)

Pursuant to the CBA, plaintiffs conducted an audit of FALC covering the period from April 28, 2008 through June 30, 2010. (FAC ¶ 14.) The auditor determined that FALC failed to report and make contributions in the principal amount of $114,769.89. (FAC ¶ 14.)

4

In accordance with the CBA, plaintiffs subsequently submitted the disputes with Integrated and FALC to binding arbitration; neither entity appeared for the arbitrations.  (FAC ¶¶ 15-16.)  The arbitrator issued an award against FALC in the amount of $154,692.68 (the "FALC Award"), and two awards against Integrated in the amounts of $77,597.72 (the "First integrated Award") and $66,091.75 (the "Second Integrated Award"), respectively, with each award containing a provision awarding 5.25% interest from the dates of the awards.  (FAC ¶¶ 17-20.)

Plaintiffs subsequently commenced three separate actions to confirm the above arbitration awards, as follows.  Plaintiffs commenced an action on July 14, 2011 against FALC to confirm the FALC Award; FALC failed to appear in that action and the Court entered judgment in the amount of $159,687.88 against FALC. (FAC ¶ 22.)

Plaintiffs commenced an action on December 8, 2011 against Integrated to confirm the First Integrated Award; Integrated appeared in the action and denied liability.  (FAC ¶ 23.)  Plaintiffs subsequently amended their complaint to allege that Integrated was FALC's alter ego and successor such that it should be liable for the judgment previously entered against FALC; Integrated filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on October 2, 2015, days before trial was set to commence, thus staying further proceedings.  (FAC ¶ 23); see Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining Educational and Industry Fund, Charity Fund v. Integrated Structures Corp., 11-cv-8975 (KBF)

(S.D.N.Y.), ECF No. 108.  On May 24, 2013, plaintiffs commenced another action against Integrated to confirm the Second Integrated Award.  (FAC ¶ 24.) Integrated failed to appear in that action, and the Court entered judgment in the amount of $68,707.24.  (FAC ¶ 24.)[2]

C.    This Action

On October 14, 2015, less than two weeks after Integrated filed its petition for bankruptcy protection, plaintiffs initiated this action by filing a complaint against Lee and Matt-Con that alleged seven claims under ERISA and the LMRA. (Compl., ECF No. 1.)  That complaint asserted four claims against Lee for (1) breach of fiduciary duty based on his conduct as to both FALC and Integrated, (2) corporate veil piercing based on Lee's domination of Integrated, (3) corporate veil piercing based on Lee's domination of FALC, and (4) ERISA fraud.  (Compl. ¶¶ 25-81.)  The complaint also asserted three claims against Matt-Con for (5) alter ego liability based on its relationship to Integrated, (6) alter ego liability based on its relationship to FALC, and (7) direct liability under the CBA.  (Compl. ¶¶ 82-110.)

On November 24, 2015, Matt-Con moved to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF No. 19.)  Lee likewise moved to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) on December 1, 2015.  (ECF No. 26.)  During the initial pretrial conference held on December 3, 2015, plaintiffs raised their intention to file an amended complaint in response defendants' motions.  That same

---

[2] In their opposition brief, plaintiffs assert that on September 29, 2015, Integrated paid $72.907 to satisfy the Second Integrated Award, but commenced a preference action within Integrated's bankruptcy proceeding against the Funds to recover that payment on November 1, 2015.  (Pls.' Opp. Mem. of Law at 3, ECF No. 52.)

day, the Court issued an Order directing plaintiffs to file their amended complaint not later than December 11, 2015.  (ECF No. 31.)[3]

In accordance with the Court's December 3 Order, plaintiffs filed the First Amended Complaint on December 11, 2015.  The FAC again alleged seven claims, but reorganized (and supplemented) them as follows.  As to Lee, the FAC again alleged that he breached his fiduciary duties to the Funds in relation to Integrated and FALC—breaking down those allegations into two separate claims—(First and Second Claims).  (FAC ¶¶ 25-80.)  Plaintiffs also again alleged a claim for ERISA fraud (Third Claim).  (FAC ¶¶ 81-88.)  The FAC did not, however, replead plaintiffs' corporate veil piercing claims.  As to Matt-Con, the FAC again alleged that it was the alter ego of Integrated and FALC (Fourth and Fifth Claims) and that it was/is bound to the provisions of the CBA entered into by those entities—breaking down the original seventh claim into two separate claims—(Sixth and Seventh Claims). (FAC ¶¶ 89-131.)

Plaintiffs' two breach of fiduciary duty claims allege that Lee breached his duties by using plan assets for his own purposes, engaging in prohibited party in interest transactions, and failing to act with the level of care, skill, prudence and diligence required of an ERISA fiduciary.  (FAC ¶¶ 35-37, 45, 49-51, 63-65, 73, 77-79.)  The FAC alleges that plaintiffs did not have knowledge of Lee's discretionary

---

[3] During the December 3 conference, the Court explained that it would consider, as part of any renewed motions to dismiss plaintiffs' anticipated amended complaint, defendants' submissions in relation to their initial motions, as well as any supplemental submissions from the parties directed to the amended pleadings.  In other words, the Court instructed defendants that it would not require them to re-submit their entire arguments as part of any renewed motions.  The Court therefore considers all of the parties' submissions—the first set of which were addressed to the original complaint and the remainder of which were addressed to the FAC—in rendering this decision.

control or authority over Integrated and FALC's assets, his breaches, or the prohibited transactions, until 2015.  (FAC ¶ 32, 38, 46, 60, 66, 74.)

Plaintiffs' ERISA fraud claim alleges that, from 2006 through the present, Lee fraudulently concealed covered work from plaintiffs and, in or about June 2015, fraudulently stated that Matt-Con was solely an equipment and real estate rental company, but later revealed that Matt-Con was a contractor who bid for concrete and steel fabrication jobs that were then performed by FALC and Integrated employees.  (FAC ¶¶ 83-85.)  The FAC alleges that Lee also fraudulently stated that FALC and Integrated lacked funds to pay their respective obligations, and fraudulently caused Integrated and FALC to avoid their obligations by transferring funds, employees, contracts and equipment between alter ego companies.  (FAC ¶¶ 86-87.)

In their alter ego claims against Matt-Con, plaintiffs allege that Matt-Con had substantially identical management, business locations, equipment, customers, supervision and/or ownership as Integrated and FALC such that a continuity of operations and/or ownership existed between Matt-Con and those entities.  (FAC ¶¶ 90, 102.)  The FAC alleges that the three companies had intermingled financial books and records, operated out of the same premises, and shared the same phone and fax numbers and managerial employees, including Lee and Tim Rexon.  (FAC ¶¶ 91-96, 103-07.)  It further alleges that Matt-Con aided Integrated and FALC in avoiding their obligations to the Funds and that Matt-Con was utilized to conceal covered work from the Funds.  (FAC ¶¶ 97, 109.)

Finally, with respect to plaintiffs' final two claims, which seek to hold Matt-Con directly liable for violating the CBA, the FAC alleges that, because Matt-Con was the alter ego of Integrated and FALC, it was required to make specified hourly contributions to the Funds in connection with all covered work.  (FAC ¶¶ 114-15, 124-25.)  It further alleges that Matt-Con performed worked that was covered by the provisions of the CBA, but failed to contribute to the Funds despite doing so. (FAC ¶¶ 117-18, 128-29.)  Plaintiffs request an opportunity to conduct audits of Matt-Con to determine the extent of its delinquency, and they allege that it is liable for all contributions determined to be due in the demanded audit.  (FAC ¶¶ 120-21, 130-31.)

On January 7, 2016, defendants filed renewed motions to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF Nos. 39, 42.)  In accordance with the Court's prior instructions, defendants submitted supplemental memoranda of law in support of their renewed motions (ECF Nos. 41, 44), rather than stand-alone opening memoranda of law.  Lee's motion argues that plaintiffs' claims should be dismissed because they belong exclusively to Integrated's bankruptcy estate, they are time-barred by ERISA's three-year statute of limitations, and the ERISA fraud claim is not pled with the particularity required by Rule 9(b).  Matt-Con's motion argues, inter alia, that the Court lacks ancillary jurisdiction over plaintiffs' claims against it and the FAC fails to adequately allege that Matt-Con had any employees who could have performed work covered by the CBA.  Plaintiffs opposed both motions in a consolidated brief on February 23, 2016.  (ECF No. 52.)  Defendants

replied, and the motions became fully briefed, on March 1, 2016.  (ECF Nos. 53, 54.)[4]

## II.    RULE 12(B)(1) MOTIONS

Before turning to defendants' merits-based arguments, the Court must consider defendants' challenges, pursuant to Rule 12(b)(1), to the Court's subject matter jurisdiction.  Under plaintiffs' view of their claims, the Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as to the breach of fiduciary duty and ERISA fraud claims against Lee, as well as the claims alleging that Matt-Con is directly liable for breach of the CBA and ERISA.  Plaintiffs argue that the Court may exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the two remaining claims asserting alter ego liability against Matt-Con.

The defendants' attack of plaintiffs' subject matter jurisdiction is two-fold. First, Lee argues that plaintiffs lack standing to pursue the claims against him on the ground that the claims are the property of the bankruptcy estate of Integrated. Lee argues that, as a result, Integrated's estate has exclusive standing to pursue these claims.  Matt-Con, for its part, argues that this Court lacks ancillary jurisdiction over plaintiffs' alter ego claims against it, and contends that this Court should decline to exercise supplemental jurisdiction.  For the reasons set forth below, the Court rejects these arguments and concludes that subject matter jurisdiction is proper as to all claims alleged in the FAC.

---

[4] The Court notes that because plaintiffs tailored the FAC to meet the arguments that defendants raised in their initial motion papers, certain of defendants' arguments are inapposite to plaintiffs' amended pleadings.  The Court does, however, take into consideration those arguments and construes them as being directed to the FAC to the extent that doing so is reasonable.

A.     Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  Plaintiffs bear the burden of establishing this Court's jurisdiction by a preponderance of the evidence.  Id.  They must do so affirmatively and may not simply rely upon favorable inferences drawn from the complaint. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  "[W]here jurisdictional facts are in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside of the pleadings such as affidavits." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).

B.     Bankruptcy Jurisdiction

Lee argues that plaintiffs lack standing to assert their three claims against him on the ground that the claims belong exclusively to Integrated's estate and should be adjudicated in the bankruptcy court overseeing its bankruptcy proceeding.  Whether bankruptcy jurisdiction exists over a non-debtor's claim is determined by "whether its outcome might have any 'conceivable effect' on the bankruptcy estate."  Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC) ("Madoff"), 740 F.3d 81, 88 (2d Cir. 2014) (alterations omitted).  The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  "Such interests include causes of action possessed by the debtor at the time of filing, and any interest in property

that the trustee recovers under specified Bankruptcy Code provisions." <u>Madoff</u>, 740 F.3d at 88 (alterations, quotation marks and citations omitted).  "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of the bankruptcy estate." <u>Id.</u> (quotation marks and alterations omitted).

"A claim based on rights 'derivative' of, or 'derived' from, the debtor's typically involves property of the estate." <u>Id.</u>  In the bankruptcy context, "derivative claims" are those that "arise from harm done to the estate and that seek relief against third parties that pushed the debtor into bankruptcy." <u>Id.</u> at 89; <u>see also</u> <u>Koch Ref. v. Farmers Union Cent. Exch., Inc.</u>, 831 F.2d 1339, 1349 (7th Cir. 1987) ("If the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim.").  To determine if a claim is derivative, the court must "inquire into the factual origins of the injury and . . . into the nature of the legal claims asserted." <u>Madoff</u>, 740 F.3d at 89; <u>see</u> <u>Johns-Manville Corp. v. Chubb Indem. Ins. Co.</u> ("<u>Manville III</u>"), 517 F.3d 52, 67 (2d Cir. 2008), <u>rev'd and remanded sub nom. on other grounds</u> <u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137 (2009).  A court must not rely on the labels that a plaintiff attaches to its complaint, as a plaintiff may not plead around a bankruptcy. <u>Madoff</u>, 740 F.3d at 91-92.  Claims which seek to increase the size of the bankruptcy estate—the bucket of assets from which creditors may seek recovery—are classic derivative claims.  <u>See</u> <u>In re Quigley, Inc.</u>, 676 F.3d 45, 56 (2d Cir. 2012) (stating

12

that "the derivative/non-derivative inquiry [is] a means to assess whether the suits at issue would affect the bankruptcy estate").

In contrast to a derivative claim, "'when creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so.'" Madoff, 740 F.3d at 88 (quoting Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1093 (2d Cir. 1995)); see also Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC) ("JPMorgan"), 721 F.3d 54, 67 (2d Cir. 2013) ("Nowhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of creditors." (quotation marks and alterations omitted)); Steinberg v. Buczynski, 40 F.3d 890, 893 (7th Cir. 1994) ("When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party."). "While a derivative injury is based upon 'a secondary effect from harm done to [the debtor],' an injury is said to be 'particularized' when it can be 'directly traced to [the third party's] conduct.'" Madoff, 740 F.3d at 89 (quoting St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 704 (2d Cir. 1989)); see also Fox v. Picard, 531 B.R. 345, 349 (S.D.N.Y. 2015).

As their allegations are currently formulated, plaintiffs allege three claims against Lee—the first alleges that Lee breached his fiduciary duties to the Funds in his exercise of operational control of Integrated's assets, the second alleges that Lee breached his fiduciary duties to the Funds in his exercise of operational control of

FALC's assets, and the third alleges that Lee fraudulently concealed covered work performed by Integrated and FALC and misrepresented the nature of Matt-Con's business, preventing plaintiffs from being able to ascertain the amount of contributions owed to the Funds or to collect delinquent contributions.  Lee argues that these claims belong to Integrated's estate because they are not unique to plaintiffs and the harm that plaintiffs allege they have suffered is no different in kind or degree than that suffered by all of Integrated's other creditors.  The Court finds these arguments unpersuasive.  Upon review of the nature of plaintiffs' claims and the precise injuries they allege, it is clear that plaintiffs allege injuries that are particularized to them and which are not derivative of harm done to Integrated's estate.

First, to the extent that plaintiffs' claims are based on Lee's conduct in relation to FALC, there is no conceivable basis for the Court to find that such claims belong to the bankruptcy estate of Integrated, an entity that Lee maintains is legally distinct from FALC.  Lee cites no authority (and provides no other ground) for this Court to hold that claims arising from FALC's delinquent contributions derive from or through Integrated such that all of Integrated's creditors would be entitled to recovery in proportionate share to their claims.  Such a position is, moreover, entirely inconsistent with that advanced by Integrated in plaintiffs' action against that entity.

Second, with respect to plaintiffs' claims based on Lee's conduct in relation to Integrated, these claims are not based on rights derivative of or derived from

Integrated's estate because they do not arise from harm done to Integrated and Integrated's other creditors could not assert them.  Rather, these claims allege injury caused by harm done specifically to plaintiffs based on particularized actions directed against them.  Plaintiffs' breach of fiduciary duty claim alleges that Lee, as a qualifying fiduciary of the Funds pursuant to ERISA, personally breached a duty to the Funds by utilizing plan assets to pay Integrated's debts and obligations to its other creditors, engaging in a series of prohibited transactions with parties in interest, and failing to discharge his duties with the requisite care, skill, prudence and diligence that he owed to the Funds.  Similarly, plaintiffs' fraud claim alleges that Lee specifically concealed information from plaintiffs and made fraudulent misrepresentations directly to them.  The particularized nature of these claims—which could not be equally asserted by all of Integrated's creditors—distinguishes this case from Madoff, where the Second Circuit reasoned that the plaintiffs' claims derived from the BLMIS bankruptcy estate because they did not allege that the defendants took any particularized actions aimed at them, Madoff, 740 F.3d at 93, and from the claims at issue in this Court's recent decision in In re Tronox Inc., No. 14-cv-5495 (KBF), 2016 WL 393543 (S.D.N.Y. Feb. 1, 2016).[5]

---

[5] The Court notes that there is also a question as to whether certain of plaintiffs' claims against Matt-Con are derivative of Integrated's bankruptcy estate such that plaintiffs lack standing to pursue them.  The Court has in mind, in particular, plaintiffs' Fourth Claim, which alleges that Matt-Con is liable as the alter ego of Integrated.  See Labarbera v. United Crane & Rigging Servs., Inc., No. 08-CV-3274 (DLI)(ALC), 2011 WL 1303146, at *7 (E.D.N.Y. Mar. 2, 2011).  However, Matt-Con has not raised this issue in any of its briefing and has certainly not provided the Court with the complicated and intricate analysis necessary to allow the Court to reach the conclusion that plaintiffs lack standing to assert their Fourth Claim.  Nevertheless, while the Court must consider an issue regarding the presence of subject matter jurisdiction sua sponte, see Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006), based on the Court's review of the pleadings, which appear to include

C.    Ancillary & Supplemental Jurisdiction

Matt-Con argues that the Court lacks ancillary jurisdiction over plaintiffs' alter ego claims, and that the Court should decline to exercise supplemental jurisdiction over all claims brought against it.  The Court concludes it need not rely on ancillary jurisdiction to assert jurisdiction over the claims against Matt-Con, and it exercises its discretion to exercise supplemental jurisdiction over any claims as to which it does not have original jurisdiction.

As Matt-Con correctly asserts, federal courts do not "possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." Peacock v. Thomas, 516 U.S. 349, 351 (1996).[6]  In Peacock, the Supreme Court held that a federal court lacked ancillary jurisdiction over a corporate veil piercing claim where such jurisdiction was purportedly based on an ERISA breach of fiduciary duty claim that had been reduced to judgment before the veil piercing action was brought.  516 U.S. at 353-54.  The Court explained that "[p]iercing the corporate veil is not itself an independent ERISA cause of action, but rather is a means of imposing liability on an underlying cause of action."  Id. at 354 (quotation marks

---

allegations of particularized injury directed to plaintiffs, the Court determines that there is a sufficient factual basis to find that plaintiffs have standing to assert this claim.

[6] "[A]ncillary jurisdiction is aimed at enabling a court to administer justice within the scope of its jurisdiction." Garcia v. Teitler, 443 F.3d 202, 208 (2d Cir. 2006) (citations and quotation marks omitted).  "Ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." Peacock, 516 U.S. at 355 (alterations omitted). Ancillary jurisdiction may be exercised for two separate purposes: "(1) to permit disposition of claims that are, in varying respects and degrees, factually interdependent by a single court, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Garcia, 443 F.3d at 208 (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994)).

omitted).  This Court agrees that it does not have ancillary jurisdiction over plaintiffs' alter ego claims against Matt-Con merely by virtue of plaintiffs having previously obtained judgments for ERISA claims against FALC and Integrated.

That being said, the Court need not rely on ancillary jurisdiction to assert subject matter jurisdiction over Matt-Con in this case.  First, plaintiffs' Sixth and Seventh Claims allege that Matt-Con directly violated sections 515 and 502(e)(1) of ERISA, 29 U.S.C. §§ 1132, 1145, because it was bound to the provisions of the CBA that the Union entered with Integrated and FALC, and was required to—but failed to—make specified hourly contributions to the Funds in connection with all work covered by those agreements.  (FAC ¶¶ 114-15, 124-25.)  Putting to the side Matt-Con's merits-based arguments with respect to these claims, plaintiffs' allegations are sufficient to confer original jurisdiction on this Court under 28 U.S.C. § 1331 as to these claims.

Second, even if ancillary jurisdiction is not available as to plaintiffs' Fourth and Fifth Claims based on plaintiffs' prior suits against Integrated and FALC, that does not mean that the Court lacks any jurisdictional hook over these claims.  A federal court may exercise supplemental jurisdiction over claims as to which it lacks original jurisdiction if they "are so related to claims [over which the district court has original jurisdiction] that they form part of the same case or controversy . . . . Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  28 U.S.C. § 1367(a); see Exxon Mobil Corp. v. Allapattah, 545 U.S. 546, 547 (2005).  The Second Circuit has held that § 1367

provides for pendent-party jurisdiction when the state law "claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party." Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000); see also Itar–Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998) (holding that a district court's exercise of pendant-party jurisdiction is discretionary, and § 1367(c) limits what a court can consider when making that decision).

Matt-Con asks this Court to dismiss the claims against it under 28 U.S.C. §§ 1367(c)(2) & 1367(c)(3). Dismissal under § 1367(c)(3) is not appropriate because, as explained below, claims over which the Court has original jurisdiction will survive defendants' motion. As to § 1367(c)(2), the Court concludes that, based on the nature of the various claims raised in the FAC, state law issues do not predominate over the federal law issues raised by plaintiffs' claims arising under ERISA. Moreover, all of the claims arise out of the same facts and circumstances and are similar in terms of the scope of the issues raised and the comprehensiveness of the remedy sought. The Court thus has little difficulty in deciding to exercise supplemental jurisdiction over all remaining claims over which it lacks original jurisdiction.

III.   RULE 12(B)(6) MOTIONS

In addition to arguing that plaintiffs' claims should be dismissed for lack of subject matter jurisdiction, defendants also argue, in the alternative, that each of the claims must be dismissed for failure to state a claim. Defendants' arguments are as follows.

As to plaintiffs' claims against Lee, defendants argue that plaintiffs' breach of fiduciary duty claims (the First and Second Claims) are time-barred because plaintiffs obtained actual knowledge of the alleged violations more than three years before filing this action.  Defendants argue that plaintiffs' fraud claim (the Third Claim) is similarly time-barred because ERISA's six year limitations period for fraud or concealment does not apply, and that it must also be dismissed for failure to meet the heightened pleading standards of Rule 9(b).

As to plaintiffs' claims against Matt-Con, Matt-Con argues that plaintiffs fail to come forward with factual allegations sufficient to support all of the elements necessary to state their alter ego claims (the Fourth and Fifth Claims).  With respect to plaintiffs' claims that Matt-Con is directly liable under the CBA for, <u>inter alia</u>, failure to make contributions to the Funds, Matt-Con argues that the FAC fails to adequately allege that it had any employees who could have performed work covered by the CBA.

As explained below, the Court denies defendants' motions as to all claims except for plaintiffs' ERISA fraud claim, which is dismissed, without prejudice, for failure to meet the particularity requirements of Rule 9(b).

A.    <u>Rule 12(b)(6) Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a

claim to relief that is plausible on its face." <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (same).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

The Court does not, however, credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." <u>Id.</u>  If the court can infer no more than "the mere possibility of misconduct" from the factual averments—in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. <u>Twombly</u>, 550 U.S. at 570; <u>Starr</u>, 592 F.3d at 321 (quoting <u>Iqbal</u>, 556 U.S. at 679).

On a motion to dismiss, the Court accepts as true the factual allegations in the pleadings and draws all inferences in plaintiffs' favor.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555-57).  If a fact is susceptible to two or more competing inferences, in evaluating these motions, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable.  <u>N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC</u>, 709 F.3d 109, 121 (2d Cir. 2013).  "[T]he existence of other, competing inferences does not prevent the plaintiff[s'] desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an obvious alternative explanation." <u>Id.</u> (internal quotation marks omitted).

Where necessary, the Court may supplement the allegations in the complaint with facts from documents either referenced in the complaint or relied upon in framing the complaint.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).  The Court may also consider "matters of which judicial notice may be taken."  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

B.    Breach of Fiduciary Duty Claims (First and Second Claims)

Plaintiffs' First and Second claims allege that Lee breached his fiduciary duties to the Funds in his exercise of control and authority over Integrated's and FALC's assets, in violation of 29 U.S.C. § 1109(a).  (FAC ¶¶ 52, 80.)  Pursuant to 29 U.S.C. § 1113, "the applicable statute of limitations for claims asserting a breach of fiduciary duty [under ERISA is]: 'the earlier of—(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or . . . (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.'"  L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc., 710 F.3d 57, 67 (2d Cir. 2013) (quoting 29 U.S.C. §

1113).  The statute of limitations is an affirmative defense as to which defendants bear the burden of proof.  Harris v. City of New York, 186 F.3d 243, 251 (2d Cir. 1999); Guo v. IBM 401(k) Plus Plan, 95 F. Supp. 3d 512, 519-20 (S.D.N.Y. 2015). "[T]he survival of a Rule 12(b)(6) motion to dismiss on statute of limitations grounds requires only allegations consistent with a claim that would not be time-barred." Harris, 186 F.3d at 251.

It is clear that if the six year limitations period applies, plaintiffs' breach of fiduciary duty claims are timely—the FAC alleges that Lee breached his fiduciary duties as recently as 2015.  The focus of the parties' dispute, however, is whether and when plaintiffs acquired actual knowledge of the breach or violation such that the alternative three year period was triggered.  A plaintiff has "actual knowledge" for purposes of triggering the three-year limitations period "when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act."  Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001); see also L.I. Head Start, 710 F.3d at 67 ("[A]ctual knowledge is strictly construed and constructive knowledge will not suffice.").  "While a plaintiff need not have knowledge of the relevant law, "he must have knowledge of all facts necessary to constitute a claim."  L.I. Head Start, 710 F.3d at 67.  "To state a claim for breach of fiduciary duty, a complaint must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty."  In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig., 756 F. Supp. 2d 330, 350 (S.D.N.Y. 2010).

At the outset, the parties agree that plaintiffs had actual knowledge of Integrated's and FALC's failure to make the required payments to the Funds when plaintiffs conducted audits of those entities for periods beginning as early as 2007 and 2008. That fact, however, is not sufficient to trigger ERISA's three year statute of limitations. The FAC alleges that plaintiffs did not have actual knowledge of Lee's discretionary authority or control over Integrated's and FALC's assets, or his utilization of plan assets to pay the debts and obligations of Matt-Con and engage in prohibited party in interest transactions, until 2015. (FAC ¶¶ 32, 38, 46, 60, 66, 74.) Plaintiffs thus argue that they lacked actual knowledge that Lee was a fiduciary of the Funds and breached those duties until that time.

Defendants counter that although Lee was not individually named in any of the prior suits against FALC and Integrated, plaintiffs knew of the deficient contributions to Integrated and FALC, that Lee was the principal of FALC and Integrated, and that he was in a fiduciary relationship with the Funds since at least 2008. In asserting that plaintiffs had knowledge of the facts regarding Lee more than three years before filing suit, defendants do not point to any allegations contained in the FAC. Instead, defendants rely on various documents relating to plaintiffs' prior lawsuits and arbitration awards against FALC and Integrated. (See Aff. of Francis A. Lee, Exs. A-G, ECF No. 28; Aff. of Frank M. Graziadei, Exs. B-N, ECF No. 23.)

Defendants assert that, based on these documents, the Court should take judicial notice, pursuant to Federal Rule of Evidence 201, of the facts necessary to

establish that plaintiffs had actual knowledge of Lee's breach of fiduciary duties to the Funds by 2008.  Rule 201 provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  "Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source."  Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).  Although a court may consider matters of which judicial notice may be taken on a Rule 12(b)(6) motion to dismiss, Brass, 987 F.2d at 150; Demopoulos v. Anchor Tank Lines, LLC, 117 F. Supp. 3d 499, 507 (S.D.N.Y. 2015), "'judicial notice of a disputed fact should not ordinarily be taken as the basis for dismissal of a complaint on its face,'" Braun v. United Recovery Sys., LP, 14 F. Supp. 3d 159, 164 (S.D.N.Y. 2014) (quoting Oneida Indian Nation of N.Y. v. New York, 691 F.2d 1070, 1086 (2d Cir. 1982)).

Although the Court is permitted to take judicial notice of facts in relation to defendants' Rule 12(b)(6) motion, the documents to which the defendants point do not establish—beyond reasonable dispute—the facts necessary to trigger the three year limitations period before 2015.

First, even if the documents upon which defendants rely are competent evidence to establish the facts they seek to prove, those documents show only that plaintiffs knew that Lee was the owner and shareholder of Integrated and FALC as early as 2008.  These documents, do not, however, establish that plaintiffs were

aware that Lee was a fiduciary of the Funds as that term is defined by ERISA. ERISA defines "fiduciary" in functional terms, stating that a person is a fiduciary with respect to a plan to the extent that he, underline inter alia, "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A); see also Finkel v. Romanowicz, 577 F.3d 79, 86 (2d Cir. 2009) (holding that an officer of a company was not an ERISA fiduciary absent allegations that he selected investments or exchanged one instrument for another, or that he was responsible for determining which of the company's creditors would be paid or in what order); Sasso v. Cervoni, 985 F.2d 49, 51 (2d Cir. 1993) ("[A] corporate officer's role in a company's failure to make such contributions is not automatically participation in a breach of fiduciary duties.").  Documents showing that plaintiffs were aware of Lee's managerial role and job title with respect to FALC and Integrated do not establish beyond reasonable dispute that plaintiffs knew that Lee was a fiduciary of the Funds.

Second, the documents upon which defendants rely do not establish—beyond reasonable dispute—that plaintiffs obtained actual knowledge of Lee's alleged actions underlying their breach claims before 2015.  The FAC alleges that Lee breached his duties to the Funds by using Integrated's and FALC's assets for personal purposes, engaging in prohibited party in interest transactions and breaching the duties of care, skill, prudence and diligence.  It alleges that he took certain of these actions as recently as July 2015 and that plaintiffs did not become

25

aware of any of Lee's specific breaches of his duties until 2015.  (E.g., FAC ¶ 35.)
Although defendants posit that plaintiffs must have known earlier of Lee's breaches
based on plaintiffs' prior litigations against FALC and Integrated, they have failed
to identify any documents that establish beyond reasonable dispute that plaintiffs
had actual knowledge of these breaches at an earlier date.[7]

Because plaintiffs plausibly allege that they did not acquire actual knowledge
of Lee's status as an ERISA fiduciary or of his actions underlying the breach claims
until 2015, and defendants have not adequately rebutted those allegations with the
documents of which they ask this Court to take judicial notice, the Court cannot
determine at this stage that plaintiffs' fiduciary duty claims are barred by ERISA's
statute of limitations.

C.    ERISA Fraud Claim (Third Claim)

Plaintiffs' Third Claim alleges that Lee fraudulently concealed that work
covered by the CBA was performed by Matt-Con, Integrated and FALC, and made
fraudulent misrepresentations regarding Matt-Con's role and FALC's and
Integrated's ability to pay their respective obligations to the Funds.  (FAC ¶¶ 83-
86.)  ERISA provides that "to the extent that a controlling corporate official
defrauds or conspires to defraud a benefit fund of required contributions, the official
is individually liable under Section 502 of ERISA, 29 U.S.C. § 1132."  Cement &

---

[7] The Court agrees with plaintiffs that Lee's alleged breaches are distinguishable from that at issue
in Demopoulos, 117 F. Supp. 3d 499, where the plaintiffs' breach of fiduciary duty claim was based
solely on the allegation that the fiduciary caused the corporation to not make the required
contributions to the funds.  See id. at 507.

<u>Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund &</u>
<u>Annuity Fund v. Lollo</u>, 35 F.3d 29, 32 (2d Cir. 1994).

As to Lee's alleged fraudulent concealment, the FAC alleges that, from 2006 to the present, Lee "fraudulently concealed covered work performed by Integrated FALC from the Funds by transferring man power, contracts, and projects between the entities" in order to "evade the entities' obligations to the Funds." (FAC ¶ 83.) The FAC further alleges that, from 2006 to the present, Lee "fraudulently utilized Matt-Con to conceal covered work from the Funds by paying wages via Matt-Con to employees working on covered projects," preventing the Funds from ascertaining the amount of contributions owed and rendering them unable to collect the delinquent contributions. (FAC ¶ 84.)

As to Lee's alleged fraudulent misrepresentations, the FAC asserts that in or about June 2015, Lee told the funds that Matt-Con was "solely an equipment and real estate rental company," but later revealed under oath that Matt-Con was "actually a contractor who bid concrete and steel fabrication jobs that were then performed by FALC and Integrated employees." (FAC ¶ 85.) The FAC further alleges that, from 2011 through the present, Lee "fraudulently stated that FALC and Integrated lacked funds to pay their respective obligations to the Funds, while in actuality Lee has simply chosen to not pay the Funds and instead raided the corporate accounts for his own personal gain and to fund his other entities." (FAC ¶ 86.)

Defendants argue that plaintiffs' Third Claim must be dismissed on the ground that, like plaintiffs' breach of fiduciary duty claims, it is time-barred under a three year statute of limitations.  Defendants further argue, in the alternative, that even if the Court applies the six year limitations period applicable to claims for fraud or concealment, plaintiffs' Third Claim is subject to dismissal for failure to meet the heightened pleading standards of Rule 9(b).

1.    Statute of Limitations

29 U.S.C. § 1113 provides that "in the case of fraud or concealment," the action must be "commenced not later than six years after the discovery of such breach or violation."  29 U.S.C. § 1113.  This exception to the generally applicable limitations periods applies to "cases in which a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment, or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty."  Caputo, 267 F.3d at 190; see also Demopoulos, 117 F. Supp. 3d at 508.

Defendants argue that the above six year limitations period for fraud or concealment does not apply on the ground that plaintiffs fail to allege that Lee engaged in a fraudulent concealment or that he misrepresented any material facts, as Lee made records available and did not hinder plaintiffs' efforts to obtain knowledge that Integrated and FALC were delinquent in certain of the contributions that those entities owed to the Funds.  This argument is unconvincing.  Defendants' arguments are conclusory and fail to read the FAC in the light most favorable to plaintiffs, as is required at this stage.  Their arguments,

28

moreover, ignore the actual allegations contained in plaintiffs' Third Claim, which
clearly state that Lee engaged in certain fraudulent concealment and made
misrepresentations that prevented plaintiffs from ascertaining the total amount of
contributions owed or pursuing all entities—including Matt-Con—that were
responsible for delinquent contributions. (FAC ¶¶ 83-86.)  Those allegations are
sufficient to justify application of the six year limitations period for fraud or
concealment to this claim.  Under that provision, plaintiffs' Third Claim is timely.

   Furthermore, even if the Court were to find that ERISA's limitations period
applicable to claims for fraud or concealment does not govern plaintiffs' Third
Claim, this claim would still be timely for the same reasons that the Court
concluded that plaintiffs' breach of fiduciary duty claims are timely.  Namely,
defendants have failed to establish that plaintiffs acquired actual knowledge of
Lee's alleged violation more than three years before plaintiffs filed this suit.

   2.   Rule 9(b)

   On a motion to dismiss, allegations of fraud must satisfy the heightened
pleading standards of Rule 9(b) by stating "with particularity" the circumstances
constituting the fraud.  Fed. R. Civ. P. 9(b).  Where a fraud claim is based on an
alleged affirmative misrepresentation, Rule 9(b) requires that a complaint "'(1)
specify the statements that the plaintiff contends were fraudulent, (2) identify the
speaker, (3) state where and when the statements were made, and (4) explain why
the statements were fraudulent.'"  Rombach v. Chang, 355 F.3d 164, 170 (2d Cir.
2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).
Further, while "[m]alice, intent, knowledge, and other conditions of a person's mind

may be alleged generally," Fed. R. Civ. P. 9(b), "plaintiffs must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent,'" <u>Loreley Fin. No. 3 Ltd. v. Wells Fargo Secs., LLC</u>, 797 F.3d 160, 171 (2d Cir. 2015) (quoting <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290-91 (2d Cir. 2006)).

Defendants argue that plaintiffs fail to allege with sufficient particularity the statements that Lee made that constitute fraud, whether the alleged statements were written or oral, or the time and place of each such statement.  (Lee's Opening Mem. of Law at 16, ECF No. 27.)  The Court agrees.  Although plaintiffs' Third Claim identifies Lee as the speaker of the allegedly fraudulent statements, describes those statements and misrepresentations on a general level, and explains why they were fraudulent, their allegations fail to identify—with the particularity required by Rule 9(b)—<u>precisely</u> what the false statements were, and where and when they were made.  Plaintiffs provide a range of years during which fraudulent statements were made (from 2006 through 2015), but fail to give the location and approximate date and time on which any particular fraudulent statements were made.  The allegations also fail to provide the form of such statements—whether they were communicated in writing, orally, or otherwise.  For plaintiffs' claims to survive a Rule 12(b)(6) motion, plaintiffs must, to a greater extent than they have done thus far, plead the precise representations that they allege were made by Lee.[8]

---

[8] Defendants further argue that plaintiffs "have failed to allege specific facts that Lee acted fraudulently or had an intent to defraud" and that "it is preposterous [for plaintiffs] to now claim that Lee attempted, in any way, to conceal or defraud the Plaintiffs" because Lee furnished plaintiffs with documents necessary for the Funds to conduct audits years ago.  (Lee's Reply Mem. of Law at 7, ECF No. 54.)  These arguments are meritless.  First, the Court believes that plaintiffs have in fact raised a strong inference of Lee's fraudulent intent.  Second, Lee's argument regarding his conduct in relation to the audits is based on matters outside of the pleadings, and thus is irrelevant on a Rule

Plaintiffs have not explicitly sought leave to amend the FAC, but the Court believes it is appropriate, in the interests of justice, to allow them another opportunity to replead their ERISA fraud claim, should they desire to do so.  <u>See</u> Fed. R. Civ. P. 15(a)(2).  The Court will allow plaintiffs this opportunity because it is possible, especially with the benefit of a certain period of discovery, that plaintiffs would be able to amend their claims to include the requisite particularity such that leave to amend would not be futile.  <u>See</u> <u>Nielsen v. Rabin</u>, 746 F.3d 58, 64 (2d Cir. 2014).  As stated below, plaintiffs will have 90 days to replead this claim.  Plaintiffs' allegations raise a high specter of fraudulent conduct even though those allegations do not yet meet the heightened pleading standards of Rule 9(b), and thus there are sufficient grounds to find that plaintiffs deserve another shot at pleading this claim.

D.    <u>Alter Ego Claims (Fourth and Fifth Claims)</u>

Plaintiffs' Fourth and Fifth Claims allege that Matt-Con is liable for the debts of Integrated and FALC owed to the Funds on the basis that it is the alter ego and/or successor of those entities.  (FAC ¶¶ 89-111.)  In its original motion papers— which as discussed above were directed to the original complaint—Matt-Con equated plaintiffs' corporate veil piercing and alter ego claims, arguing that none were adequately pled because there were "no factual allegations as to the domination of Matt-Con by either FALC or Integrated, nor [we]re there any factual

---

12(b)(6) motion to dismiss.  Third, if one could properly consider the history between plaintiffs on the one hand and Integrated, FALC, and Lee on the other, Lee's provision of materials allowing the Funds to conduct audits does nothing to undermine the allegations of fraudulent misrepresentation and fraudulent concealment contained in plaintiffs' Third Claim.  The fraudulent conduct alleged in the Third Claim is of an entirely different nature than the conduct that Lee cites in his motion papers.

allegation as to how this domination was used by FALC or Integrated to commit a wrong against the plaintiffs." (Matt-Con's Mem. of Law in Support of Motion to Dismiss Compl. at 23, ECF No. 25.) Matt-Con also argued that plaintiffs failed to adequately allege that FALC, Integrated or Matt-Con abused the corporate form as a sham to perpetrate a fraud or injustice. (Id. at 24.) After plaintiffs amended their claims in the FAC (including by removing all claims for corporate veil piercing and revising the alter ego claims), Matt-Con did not again raise these arguments in its supplemental memorandum of law or its reply memorandum of law. (See Matt-Con's Mem. of Law in Support of Motion to Dismiss First Am. Compl., ECF No. 41; Matt-Con's Reply Mem. of Law in Support of Motion to Dismiss First Am. Compl., ECF No. 53.) While the Court assumes that Matt-Con did not restate its veil piercing/alter ego arguments because it determined that the purported defects were no longer present in plaintiffs' amended claims, the Court nonetheless briefly considers Matt-Con's arguments as against the Fourth and Fifth Claims in the FAC.

To the extent that Matt-Con continues to advance these arguments in relation to the FAC, its analysis is misguided. Matt-Con's directed its analysis to the standards for pleading a corporate veil piercing claim under New York law, rather than the standards that govern an alter ego claim in relation to ERISA.

In the ERISA context, "[t]he focus of the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in

operations." Lihli Fashions Corp. v. N.L.R.B., 80 F.3d 743, 748 (2d Cir. 1996)
(quotation marks omitted).  In determining whether two companies are alter egos
for purposes of ERISA, the Second Circuit has stated that the inquiry "focuses on
commonality of (i) management, (ii) business purpose, (iii) operations, (iv)
equipment, (v) customers, and (vi) supervision and ownership." New York State
Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640,
649 (2d Cir. 2005).  The Second Circuit weighs these factors while "[c]onsidering the
important policy considerations for employing a flexible alter ego test in the ERISA
context . . . ." Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding
A.S., 629 F.3d 282, 289 (2d Cir. 2010).  "Although perhaps a germane or sufficient
basis for imposing alter ego status, an anti-union animus or an intent to evade
union obligations is not a necessary factor." Id. at 288 (quotation marks omitted)
(emphasis in original).

　　　　Plaintiffs' Fourth and Fifth Claims allege that Matt-Con had "substantially
identical management, business locations, equipment, customers, supervision
and/or ownership" with Integrated and FALC, and that all three companies
intermingled financial books and records, operated out of the same premises, shared
the same phone system and fax number, and shared managerial employees.  (FAC
¶¶ 90-95, 102-07.)  These allegations are clearly sufficient, at the pleading stage, to
support claims that Matt-Con was the alter ego of Integrated and FALC for
purposes of ERISA.  E.g., Trustees of New York City Dist. Council of Carpenters
Pension Fund, Welfare Fund, Annuity Fund v. Vintage Tile & Flooring, Inc., No. 14-

cv-06450 (KBF), 2015 WL 3797273, at *3 (S.D.N.Y. June 18, 2015); <u>Metal Lathers</u>

<u>Local 46 Pension Fund v. River Ave. Contracting Corp.</u>, 954 F. Supp. 2d 250, 257-60

(S.D.N.Y. 2013).

      E.    <u>Claims Alleging Matt-Con's Direct Liability (Sixth and Seventh</u>
            <u>Claims)</u>

Plaintiffs' Sixth and Seventh Claims allege that, because Matt-Con was the

alter ego of Integrated and FALC for purposes of ERISA, Matt-Con is bound to the

provisions of the CBA that the Union entered into with those entities and was

therefore required to make specified hourly contributions to the Funds in connection

with all work covered by the CBA.  (FAC ¶¶ 113-15, 123-25.)  The FAC further

alleges that "Matt-Con has performed Covered Work while bound to the provisions

of the CBA" and "has failed to contribute to the Funds despite performing Covered

Work," in violation of the CBA and ERISA.  (FAC ¶¶ 117-19, 127-29.)  In their Sixth

Claim, plaintiffs also allege that "Francis Lee has admitted under oath that he

serves as the operations manager of Matt-Con" and "that in this role he supervised

operations and employees that perform structural steel and concrete jobs within the

CBA's definition of Covered Work."  (FAC ¶ 117.)

ERISA § 515 provides that "[e]very employer who is obligated to make

contributions to a multiemployer plan under the terms of the plan or under the

terms of a collectively bargained agreement shall . . . make such contributions in

accordance with the terms and conditions of such plan or such agreement."  29

U.S.C. § 1145.  Under ERISA, a determination that "an entity is an alter ego

signifies that, for all relevant purposes, the non-signatory is legally equivalent to

the signatory and is itself a party to the collective bargaining agreement."

Kombassan., 629 F.3d at 288 (quotation marks and alterations omitted).

Matt-Con argues that plaintiffs' Sixth and Seventh Claims must be dismissed because the FAC does not actually allege that "Matt-Con employed any workers who actually performed work allegedly covered by the collective bargaining agreement." (Matt-Con's Reply Mem. of Law at 6.) Matt-Con contends that plaintiffs could not make such an allegation because "[t]hey took the deposition of Patricia Lee on June 19, 2015 and she testified that Matt-Con had no employees other than her." (Id. at 8.) As explained below, the Court finds these arguments unconvincing at this early stage.

First, Matt-Con's arguments are flawed because they are premised on factual materials external to the pleadings. Matt-Con cannot rely on an affidavit by Patricia Lee (who is not even referenced by name in the FAC) (see Aff. of Patricia Lee, ECF No. 24), or her deposition testimony that occurred in relation to a separate action, to support a motion brought pursuant to Rule 12(b)(6). Second, Matt-Con's arguments are based on a construction of the allegations that are most favorable to Matt-Con, rather than to plaintiffs. When the allegations in the FAC are taken together, and properly viewed in the light most favorable to plaintiffs, they plausibly show that Matt-Con was the alter ego of Integrated and FALC such that Matt-Con became bound by the CBA, and that it performed covered work but failed to make necessary contributions to the Funds. Although Matt-Con may eventually succeed in establishing that it was not the alter ego of Integrated or FALC and that

it performed no work covered by the CBA (and therefore could not have directly violated those agreements), plaintiffs' allegations, when construed in the light most favorable to plaintiffs, are sufficient to defeat Matt-Con's Rule 12(b)(6) motion.

IV.    CONCLUSION

For the reasons set forth above, defendants' motions to dismiss the First Amended Complaint are GRANTED IN PART and DENIED IN PART.  Defendants' motions are granted with respect to plaintiffs' ERISA fraud claim, which the Court dismisses without prejudice.  The motions are denied as to all other claims.

Discovery shall commence immediately.  Plaintiffs shall have 90 days from the date of this Opinion & Order to file a second amended complaint—if they choose to do so—that repleads their ERISA fraud claim.

The Clerk of Court is directed to close the motion at ECF Nos. 39 and 42.

SO ORDERED.

Dated:      New York, New York
            March 14, 2016

_____
KATHERINE B. FORREST
United States District Judge